**TRIBUNE COMPANY; Tribune New York Holdings, Inc., now merged with WPIX Inc., Plaintiffs–Appellees,**

v.

**Hamid ABIOLA et al., Defendants– Appellants.**

No. 1915, Docket 95–7088.

United States Court of Appeals, Second Circuit.

Argued July 19, 1995.

Decided Sept. 11, 1995.

Michael M. Connery, Skadden, Arps, Slate, Meagher & Flom, New York City (Julie B. Carlin–Sasaki, Skadden, Arps, Slate, Meagh-

er & Flom, of counsel), for defendant-appellant New York newspaper Printing Pressmen's Union No. 2.

Kenneth Gordon, Steven J. Saltiel, Gordon & Gordon, P.C., New York City, for defendants-appellants Robert P. Allen, Jr., George Baltzer, et al.

William G. O'Donnell, O'Donnell & Fox, P.C., New York City, for defendants-appellants Robert A. Purcigliotti and Cascione, Chechanover & Purcigliotti.

Raymond A. Levites, Diane Britton, Pavelic & Levites, New York City, for defendant-appellant Newspaper and Mail Deliverers' Union, New York and Vicinity.

Garbrielle Semel, Weissman & Mintz, New York City, and Richard Rosenblatt, Boyle, Tyburski, Toll & Rosenblatt, Englewood, Colo., for defendant-appellant New York Mailers' Union No. 6, Printing Publishing and Media Workers Sector of the Communications Workers of America.

David S. Frankel, Kramer, Levin, Naftalis, Nessen, Kamin & Frankel, New York City, for defendant-appellant Dr. Walter Stingle.

Andrew S. Hoffman, Wiseman, Hoffman & Walzer, New York City, for defendants-appellants William Adam, Louis Adesso, et al.

Mitchell Segal, Mitchell Segal, P.C., Great Neck, NY, for defendants-appellants Carmine Bucco, Jr., Carmine Bucco, Sr., et al.

M. Patricia Smith, Assistant Attorney General, State of New York, New York City, N.Y. (Dennis C. Vacco, Attorney General, Jane Lauer Barker, Assistant Attorney General in Charge of Labor Bureau, New York City, of counsel), for intervenor-appellant NYS Workers' Compensation Board.

Steven M. Bierman, Sidley & Austin, New York City (Alan M. Unger, Sidley & Austin, New York City, Richard S. Busch, King & Ballow, Nashville, Tenn., of counsel), for plaintiffs-appellees.

Before: WINTER, CALABRESI and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

We are asked to decide whether a district court may abstain from exercising its jurisdiction pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), when a plaintiff asserts claims only for money damages.

The Tribune Company and its parent corporation, former owners of the *New York Daily News*, filed an action against numerous defendants: several hundred union workers at the *News*, three of their unions, the workers' law firm, an individual lawyer, and a doctor who examined those workers—all of whom had purportedly engaged in a conspiracy to file fraudulent claims for workers' compensation benefits against the plaintiffs. The United States District Court for the Southern District of New York (Loretta A. Preska, *Judge*) denied the defendants' motion to dismiss the complaint on grounds of *Burford* abstention. 869 F.Supp. 1076 (S.D.N.Y.1994). In light of the Supreme Court's decision in *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("*NOPSI*"), we hold that it is generally appropriate for a district court to abstain on *Burford* grounds only when asked to provide equitable relief. Alternatively, we hold that even if *Burford* abstention would be available when a district court is not asked to grant equitable relief, the district court in this case did not abuse its discretion when it declined to abstain on *Burford* grounds. We therefore affirm.

## I. BACKGROUND

Because we are reviewing the district court's denial of a motion to dismiss, we must accept as true the allegations of the complaint. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993) (reviewing grant of motion to dismiss under Fed. R.Civ.P. 12(b)(6)); *see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (holding that dismissal is proper only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). We accordingly relate the plaintiffs' version of the facts.

From 1990 to 1991, unionized workers engaged in a bitter strike at the *New York Daily News*—a strike that ultimately led the

Tribune Company, then owner of the *News* and now one of the plaintiffs, to sell the newspaper to Robert Maxwell. In what the plaintiffs describe as a final act of vengeance, the various defendants conspired to arrange for each of the several hundred union member defendants to file a fraudulent workers' compensation claim against the Tribune Company, based on hearing loss allegedly caused by exposure to excessive noise at *Daily News* facilities.

This scheme had two essential components. First, each of the defendant workers submitted falsified medical evidence of hearing loss to the New York State Workers' Compensation Board. The unions directed the workers to retain the legal services of the defendant law firm Cascione, Chechanover & Purcigliotti. Robert A. Purcigliotti, a member of the firm and also a defendant, was primarily responsible for preparing, filing, prosecuting, and settling the fraudulent claims. Purcigliotti also directed the workers to obtain hearing examinations from the defendant Dr. Walter Stingle. Although Dr. Stingle knew that the workers had been coached to exaggerate their hearing loss during these examinations, he nevertheless certified that their audiograms were accurate. Second, the defendants conspired to attribute liability for their false hearing loss claims to the Tribune Company under the "last employer" doctrine, which provides that the last employer who exposes an employee to harmful noise is liable in full for the employee's occupationally related hearing loss. N.Y.WORK.COMP.LAW § 49–ee (McKinney 1993); *see also id.* § 49–bb (providing that compensation for hearing loss is due and payable after three months from employee's removal from exposure to harmful noise). At the instigation of Purcigliotti and his law firm, the individual workers falsely stated on their workers' compensation applications that they had last been exposed to harmful noise on the date that the strike began, and that the new owner of the *News* gave them hearing protectors after the strike ended—facts that, if true, would make the Tribune Company liable for the workers' hearing loss. Faced with these claims, the

Tribune Company settled approximately three hundred claims over three years—until it uncovered evidence of the fraudulent scheme.

The plaintiffs filed suit in the United States District Court for the Southern District of New York. Their amended complaint asserts claims for fraud, negligent misrepresentation, and unjust enrichment, as well as violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. Although their original complaint sought an injunction barring the defendants from participating in any further proceedings before the Workers' Compensation Board, the amended complaint seeks only monetary damages, including treble damages under RICO.

The defendants moved to dismiss the amended complaint on several grounds, including abstention under *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The New York State Workers' Compensation Board intervened and also moved to dismiss on abstention grounds. In a published opinion, the district court rejected the defendants' arguments that *Burford* abstention was appropriate. 869 F.Supp. at 1083–87. More specifically, the district court found that its exercise of jurisdiction over the plaintiffs' claims would not disrupt New York's effort to create a coherent workers' compensation system, *id.* at 1085–86, and that the plaintiffs could not obtain relief from the Workers' Compensation Board that would adequately substitute for their federal remedies under RICO, *id.* at 1086–87. Taking note of the Supreme Court's admonition that "the obligation of the federal court to adjudicate claims within its jurisdiction is 'virtually unflagging,'" *id.* at 1087 (quoting *NOPSI,* 491 U.S. at 359, 109 S.Ct. at 2513 (internal quotation marks and citation omitted)), the district court denied the motion to dismiss on *Burford* grounds.[1] *Id.* The defendants and the Workers' Compensation Board obtained an order from the district court certifying for immediate appeal only that portion of the ruling that addressed the

---

1. The district court granted the motion to dismiss only with respect to the unjust enrichment claims against certain defendants, 869 F.Supp. at 1102.

That ruling was not certified for interlocutory appeal.

*Burford* abstention issue. *See* 28 U.S.C. § 1292(b) (authorizing discretionary interlocutory appeals upon certification of district court and acceptance by court of appeals). In an order dated January 31, 1995, we granted defendants' and intervenor's petition to hear this interlocutory appeal.

## II. DISCUSSION

▮▮▮ We review a district court's abstention decision for abuse of discretion. *Bethphage Lutheran Serv., Inc. v. Weicker,* 965 F.2d 1239, 1244 (2d Cir.1992). We have observed that when a district court decides to abstain from exercising its jurisdiction, our "review is somewhat rigorous in view of the fact that we are considering an exception to a court's normal duty to adjudicate a controversy properly before it." *Id.* Because the district court in the present case rejected the defendants' request to abstain on *Burford* grounds, we review the district court's decision in light of its considerably broader discretion to retain jurisdiction over the complaint.

▮▮▮ In *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), "a Federal District Court sitting in equity was confronted with a Fourteenth Amendment challenge to the reasonableness of the Texas Railroad Commission's grant of an oil drilling permit." *NOPSI,* 491 U.S. at 360, 109 S.Ct. at 2514. The challenge involved predominantly state law claims, and "[t]he constitutional challenge was of minimal federal importance, involving solely the question whether the commission had properly applied Texas' complex oil and gas conservation regulations." *Id.* (citing *Burford,* 319 U.S. at 331 & n. 28, 63 S.Ct. at 1106 & n. 28). The Supreme Court characterized the Fourteenth Amendment due process claim as a "simple proceeding in equity to enjoin the enforcement of the Commission's order." *Burford,* 319 U.S. at 317, 63 S.Ct. at 1099.

In *Burford,* the Court held that, as a matter of sound equitable discretion, the district court had properly declined to exercise its jurisdiction because of several factors, including the complex state regulatory scheme involved, *id.* at 318–24, 63 S.Ct. at 1099–1103, the local importance of the matters before

the regulatory agency, *id.* at 320, 63 S.Ct. at 1100, the existence of a unified system of review of commission decisions by a single court, the potential for delay, *id.* at 325, 63 S.Ct. at 1103, misunderstanding of local law, and needless conflict with the state policy by federal review, *id.,* at 325, 63 S.Ct. at 1103, and because plaintiff's federal claims could be heard in the relevant state proceedings and would be "fully preserved" by appeal to the Supreme Court, if necessary, *id.* at 334, 63 S.Ct. at 1107.

One commentator has suggested that over time, "the lack of guidance from the Supreme Court as to when *Burford* abstention is appropriate ... resulted in divergent lower court approaches." ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 12.2.3, at 611 (1989 & Supp.1992). Accordingly, in 1989, the Supreme Court took pains in *NOPSI* to reiterate the narrow reach of *Burford* abstention, and to distill the distinctively equitable principles underlying that doctrine:

> Where timely and adequate state-court review is available, a federal court *sitting in equity* must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be *disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*NOPSI,* 491 U.S. at 361, 109 S.Ct. at 2514 (emphasis added and citation omitted).

The Supreme Court explained that abstention doctrines are grounded in the courts' longstanding discretion to determine whether to grant equitable relief, and in the fact that "there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do.'" *NOPSI,* 491 U.S. at 359, 109 S.Ct. at 2513 (quoting *Younger v. Harris,* 401 U.S. 37, 45, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971)). When a federal court sits in equity—that is,

when it is asked to provide equitable relief—it " 'should be wary of interrupting the proceedings of state administrative tribunals by use of the extraordinary writ of injunction.' " *NOPSI*, 491 U.S. at 362, 109 S.Ct. at 2515 (quoting *Public Util. Comm'n of Ohio v. United Fuel Gas Co.*, 317 U.S. 456, 468–69, 63 S.Ct. 369, 375–76, 87 L.Ed. 396 (1943)).

The plaintiffs urge us to interpret *NOPSI* as holding that a federal court may abstain on *Burford* grounds only if it is sitting in equity. There is little consensus among our sister circuits on this issue. Both the First and Ninth Circuits have held that *NOPSI* limits the reach of *Burford* to cases involving claims for equitable relief. *Garamendi v. Allstate Insur. Co.*, 47 F.3d 350 (9th Cir. 1995) ("The Supreme Court's recent, restrictive reading of *Burford*, together with its reaffirmation of the doctrine's equitable predicate, leads us to conclude that a district court may not abstain under *Burford* when the plaintiff seeks only legal relief."), *cert. granted*, —— U.S. ——, 116 S.Ct. 334, —— L.Ed.2d —— (1995); *Fragoso v. Lopez*, 991 F.2d 878, 882 (1st Cir.1993) ("When ... the only equitable power a court is asked to exercise constitutes the very act of abstaining under *Burford*, we think it is highly questionable whether the court is one 'sitting in equity' to which *Burford* abstention might be available."); *see also id.* at 883 n. 6. The Eighth Circuit, by contrast, has concluded that *Burford* abstention may be invoked even if the plaintiff seeks money damages.[2] *Wolfson v. Mutual Benefit Life Insur. Co.*, 51 F.3d 141, 147 (8th Cir.1995) (upholding district court's decision to abstain from adjudicating plaintiff's claims for insurance benefits under ERISA, in light of defendant insurer's

involvement in pending state insolvency proceeding). The Third Circuit has apparently split on the issue. *Compare Riley v. Simmons*, 45 F.3d 764, 772 n. 7 (3d Cir.1995) (Hutchinson, J.) (expressing reluctance of "the opinion writer, not the Court," to restrict *Burford* abstention to equity) *with id.* at 778–79 (Nygaard, J., concurring) (arguing that *NOPSI* and circuit precedent limit *Burford* abstention to cases where equitable or declaratory relief is sought).[3]

We find it significant that the Supreme Court carefully traced the origin of abstention doctrines to the federal courts' discretion to withhold equitable relief, *NOPSI*, 491 U.S. at 359, 109 S.Ct. at 2513, and reformulated the *Burford* doctrine to require federal courts "sitting in equity" to abstain from exercising their jurisdiction in certain circumstances. *Id.* at 361, 109 S.Ct. at 2514. Injunctions are the most intrusive sort of judicial relief, and may directly interfere with "the proceedings or orders of state administrative agencies." *Id.* The Supreme Court's decision in *NOPSI* leaves little doubt that *Burford* abstention is generally appropriate only in cases where equitable relief is sought.

The defendants claim that our decision in *Sheerbonnet, Ltd. v. American Express Bank Ltd.*, 17 F.3d 46 (2d Cir.1994), rejected the notion that *Burford* abstention is appropriate only when a plaintiff seeks equitable relief. In support of this argument, they point out that this court omitted the phrase "sitting in equity" when quoting *NOPSI*'s restatement of the *Burford* doctrine, *Sheerbonnet*, 17 F.3d at 48, and proceeded to address the merits of *Burford* abstention even though the plaintiffs sought only money damages. The defendants read too much into an ellipsis. The parties in *Sheerbonnet* had not raised the issue whether *Burford* abstention was

---

**2.** The Eleventh Circuit, in an opinion that was later vacated, rejected without explanation the position that courts cannot abstain under *Burford* when faced with damages claims. *Taffet v. Southern Co.*, 930 F.2d 847, 853 n. 4 (11th Cir. 1991) ("This argument ... [that *Burford* is applicable only to courts sitting in equity] is meritless."), *vacated on other grounds*, 967 F.2d 1483 (11th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 657, 121 L.Ed.2d 583 (1992).

**3.** *See also University of Md. v. Peat Marwick Main & Co.*, 923 F.2d 265, 272 (3d Cir.1991) (reaffirming the Third Circuit's statement in *Baltimore*

*Bank for Cooperatives v. Farmers Cheese Coop.*, 583 F.2d 104, 111 (3d Cir.1978), that traditionally, abstention is proper only in cases involving equitable relief, and trying to harmonize that statement with *Lac D'Amiante du Quebec, Ltee. v. American Home Assurance Co.*, 864 F.2d 1033, 1044–45 (3d Cir.1988), which permitted *Burford* abstention in a declaratory judgment case); *General Glass v. Monsour Medical Found.*, 973 F.2d 197, 202 (3d Cir.1992) (hesitating to embrace rule that *Burford* abstention may be ordered only in case of an equitable nature, in light of "inconclusive" "[d]ecisional authority").

permissible only in equitable actions, so we had no occasion to rule on it. Indeed, the result we reached—that *Burford* abstention was not appropriate—reinforces our conclusion today that only claims seeking equitable relief will generally pose a danger of interfering with state proceedings or orders.

■ We need not decide whether *NOPSI* entirely forecloses the possibility that, in highly unusual circumstances, not now foreseeable, a plaintiff might assert claims for money damages that, if granted, might unduly interfere with a state proceeding or order, and thus make it appropriate for a district court to abstain on *Burford* grounds. Even if *Burford* abstention would arguably be appropriate in cases where equitable relief is not sought, we find that the district court in this case did not err in refusing to abstain.

We recently observed that "[o]nly under exceptional circumstances" may federal courts eschew their duty "to exercise jurisdiction over all cases properly before them." *Youell v. Exxon Corp.*, 48 F.3d 105, 108 (2d Cir.1995) (internal quotation marks and citation omitted). *Burford* abstention is an " 'extraordinary and narrow exception[ ]' to a federal court's duty to exercise jurisdiction." *Id.* (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)). Under the *NOPSI* test, the first inquiry is whether "timely and adequate state-court review" of plaintiff's claims is available. *NOPSI*, 491 U.S. at 361, 109 S.Ct. at 2514. We therefore examine the state framework for addressing the plaintiffs' claims.

New York does have a mechanism permitting the re-opening of workers' compensation claims before the Workers' Compensation Board on grounds of fraud. N.Y. WORK. COMP.LAW § 123 (McKinney 1993). Under the circumstances of this case, however, the review provided by the state administrative agency is not comparable to that afforded by the federal court. The principal defendants in this case are not proper parties to workers' compensation proceedings in New York. Furthermore, the Board cannot require a

claimant to return moneys already paid. *Id.* § 22.[4] The substance of the plaintiffs' RICO claims—including, for example, the alleged existence of a "pattern" and "enterprise", *see McLaughlin v. Anderson*, 962 F.2d 187, 190 (2d Cir.1992) (holding that to prevail under civil RICO, plaintiff must prove that defendants participated in the conduct of an enterprise through a pattern of racketeering activity)—cannot be adjudicated in proceedings before the New York Workers' Compensation Board. N.Y. WORK. COMP. LAW § 20 (McKinney 1993) (authorizing Board only "to determine all questions in relation to the payment of claims presented to it for compensation under [the Workers' Compensation Law]."). Significantly, the Board cannot award the treble damages or attorneys' fees that are available under RICO. We have previously stated that "the unavailability of treble damages and attorneys' fees in an action before [a state tribunal] ... militates against the application of the *Burford* doctrine." *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1309 (2d Cir. 1990). Because of the Board's limitations, the district court properly concluded that the state "appellate court that sits in review of the Board decisions involved here lack[s] jurisdiction to hear plaintiffs' RICO claims fully." 869 F.Supp. at 1087.

Secondly, the plaintiffs in this case have brought garden-variety claims for money damages including their claims for treble damages under RICO, 18 U.S.C. § 1962, that present no danger of interfering with any proceeding or order of the New York State Workers' Compensation Board. In their amended complaint, the plaintiffs do not request an injunction barring the defendants from pursuing their workers' compensation claims before the Board; they do not seek to overturn any workers' compensation award made by the Board; nor do they request any other equitable relief. At most, an award of RICO damages by the district court might be used as a basis for offensive collateral estoppel by the plaintiffs in subsequent proceedings before the Board or a state court to

---

4. Section 22 of the New York Workers' Compensation law, providing for the review of awards, decisions or orders, states that "[n]o such review

shall affect such award as regards any moneys already paid" with some few exceptions not relevant here.

overturn those workers' compensation awards, to prove the fact that individual workers had submitted falsified medical evidence to the Board. But precisely because further state proceedings would be necessary to invalidate the state agencies' awards, we find that the district court's exercise of jurisdiction over the plaintiffs' damages claims would in no way "interfere with the proceedings or orders" of the Board.

### III. CONCLUSION

To summarize: There are no grounds for abstention here whether or not *Burford* applies. *Burford* abstention is generally appropriate only when a district court is asked to grant equitable relief. Because the plaintiffs sought only damages against various private individuals and did not seek to enjoin any proceedings or invalidate any order of the New York State Workers' Compensation Board, the court correctly declined to abstain on *Burford* grounds. Even if *Burford* abstention were available when a district court is not asked to grant equitable relief, the district court in this case did not abuse its discretion when it declined to abstain on *Burford* grounds.

Affirmed.