225 F.3d 227 (2nd Cir. 2000)
 HOWARD J. KIRSCHNER, D.D.S., Plaintiff-Appellant,
v.
IRA KLEMONS, D.D.S., JAY GOLDMAN, D.D.S., LOUIS CATONE, Director of the Office of Professional Discipline, RICHARD P. MILLS, Commissioner of the New York State Education Department, CARL T. HAYDEN, Chancellor of the Board of Regents of the University of the State of New York, JOHN DOES 1-5, and JANE DOES 1-5, Defendants-Appellees.
 Docket No. 99-9173
August Term, 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: May 25, 2000
Decided: September 26, 2000
 
 Appeal from judgment of the United States District Court for the Southern District of New York (Casey, J.) dismissing Kirschner's suit on the ground that doctrine of Younger abstention required dismissal. The Court of Appeals (Leval, J.) affirms the judgment in part and vacates in part.[Copyrighted Material Omitted][Copyrighted Material Omitted]
 
 
 1
 JEFFREY A. JANNUZZO, New York, NY, for Appellant.
 
 
 2
 JOEL SIMON, New York, NY, for Appellee Ira Klemons.
 
 
 3
 JAMES MODZELEWSKI, New York, NY, for Appellee Jay Goldman.
 
 
 4
 MARION R. BUCHBINDER, Assistant Solicitor General, New York, NY (Eliot Spitzer, Attorney General of the State of New York), for Appellees Louis Catone, Director of the Office of Professional Discipline, Richard P. Mills, Commissioner of the New York State Education Department, and Carl T. Hayden, Chancellor of the Board of Regents of the University of the State of New York.
 
 
 5
 Before: LEVAL, SACK, Circuit Judges, and GOLDBERG*, Judge.
 
 LEVAL, Circuit Judge:
 
 6
 Plaintiff-Appellant Howard J. Kirschner, D.D.S., brought suit against Defendants-Appellees Ira Klemons, D.D.S., Jay Goldman, D.D.S., Louis Catone, Director of the Office of Professional Discipline, Richard P. Mills, Commissioner of the New York State Education Department, and Carl T. Hayden, Chancellor of the Board of Regents of the University of the State of New York. Kirschner sought (1) a preliminary injunction against the Board of Regents ("Regents") to enjoin the Regents from publishing a decision regarding complaints of professional misconduct against Kirschner until Kirschner could obtain review of the Regents' decision in an Article 78 proceeding, (2) declaratory and injunctive relief against Catone, Mills, and Hayden, pursuant to 42 U.S.C. § 1983, based on their alleged violation of Kirschner's federal and state constitutional rights to free expression, (3) money damages from Klemons, pursuant to § 1983, based on his alleged violation of Kirschner's federal and state constitutional rights to free expression, and (4) money damages from Klemons and Goldman based on their allegedly bringing malicious professional misconduct complaints against Kirschner and committing prima facie tort, and based on Klemons's alleged dissemination of confidential information from Kirschner's professional misconduct hearings. The district court (Casey, J.) dismissed Kirschner's suit in its entirety on the ground that the doctrine of Younger abstention required dismissal. See Younger v. Harris, 401 U.S. 37 (1971).
 
 
 7
 On appeal, Kirschner contends that the Younger abstention doctrine does not require dismissal of any of his claims. We find that Kirschner's arguments have merit with respect to his claims against Klemons, but not as to the other defendants. We therefore (1) affirm the district court's dismissal as against Catone, Mills, and Hayden, because the doctrine of Younger abstention requires dismissal, and (2) affirm the district court's dismissal as against Goldman because federal court jurisdiction does not lie, but (3) vacate the dismissal as against Klemons.
 
 BACKGROUND
 
 8
 Kirschner is a dentist, licensed to practice in the State of New York, who makes part of his living performing Independent Medical Examinations ("IMEs") for insurance companies. The insurance companies that employ Kirschner use his IME reports, which give his opinions on the conditions of claimant policyholders, in determining how to treat individual policyholders' claims for coverage. With respect to claims of a disorder known as TMJ (tempromandibular joint disorder), Kirschner believes that diagnoses are fraudulent unless confirmed by "objective" tests and that the patients diagnosed as suffering from TMJ do not actually have any dental disorder. Kirschner also believes and claims that a dental appliance called a MORA, commonly prescribed to treat this disorder, is ineffective as a treatment and may even be harmful. Kirschner has apparently performed thousands of IMEs on automobile accident victims who claimed to suffer from TMJ but has never found a patient to be suffering from an actual dental disorder. His IMEs in such cases have led to the insurer's denial of benefits. The New York State licensing authority imposed sanctions on Kirschner, based at least in part on his IMEs rejecting claims for TMJ. He brought this suit for injunctive relief and damages contending that his opinions rendered in IMEs are protected speech. In this appeal, Kirschner continues his efforts to contest professional misconduct complaints that were brought against him based, in part, on statements he had made in IMEs. He also seeks protection against future complaints that he anticipates will be brought against him for similar reasons.
 
 
 9
 In New York, complaints of professional misconduct by dentists are dealt with by the State Education Department ("Department"), the licensing authority for dentists in New York. The Department grants licenses to dentists for life, unless the Board of Regents of the University of the State of New York ("Regents") determines that a dentist's license should be revoked, annulled, or suspended. A state board of dentistry, appointed by the Regents, assists the Regents and the Department in their professional licensing and discipline functions. When a complaint alleging professional misconduct by a dentist is received, the Department investigates the complaint and then refers it to a professional conduct officer designated by the Regents. If the professional conduct officer finds that there is substantial evidence of misconduct, the Department prepares charges of the alleged misconduct. The charge is then tried before a hearing panel composed of members of the state dentistry board and a public representative who may or may not be a member of the state dentistry board or another professional board. The Department also designates an administrative officer who does not vote but who rules on motions, procedures, and legal objections, and drafts the panel's final written report, which contains findings of fact, a determination of guilt or non-guilt on each charge, and a penalty recommendation. The dentist and his counsel may appear before the panel, and the dentist may make a written response prior to the hearing. A Regents review committee, appointed by the Board of Regents and including at least one Regent, reviews the panel's report. The dentist may also appear, and may be represented by counsel, before the Regents review committee. The review committee submits its report, in conjunction with the hearing panel's report and a transcript of the hearing, to the Regents, who determine whether the dentist is guilty or not guilty of each charge and determine any penalty to be imposed. The dentist may seek further review of the Regents' decision by bringing an Article 78 proceeding in the Appellate Division, Third Department.
 
 
 10
 In Kirschner's case, charges were brought against him for: "practicing the profession [of] dentistry fraudulently" (for making allegedly false statements in IME reports to Allstate Insurance Company ["Allstate"]), "committing unprofessional conduct" (for failing to use proper infection prevention techniques), "practicing the profession of dentistry with gross incompetence" (for making statements in IME reports to Allstate that "were unscientific and far removed from currently accepted information"), and "practicing the profession of dentistry with incompetence on more than one occasion" (also for making unscientific statements in IME reports). The hearing panel recommended finding Kirschner guilty of the vast majority of the charges. As penalties, the panel recommended (1) a fine of 500 dollars, for the charge of committing unprofessional conduct by failing to use scientifically accepted infection prevention techniques, in violation of N.Y. Education Law § 6509(9) and 8 N.Y.C.R.R. 29.2(a)(13), and (2) a 10,000 dollar fine, a two year suspension of his license, with the last eighteen months stayed, and a two year period of probation, for the charges of practicing dentistry fraudulently in violation of Education Law § 6509(2), practicing dentistry with gross incompetence in violation of Education Law § 6509(2), and practicing dentistry with incompetence on more than one occasion in violation of Education Law § 6509(2).
 
 
 11
 The gravamen of Kirschner's claim is that the complaints filed against him, and the findings against him, were impermissible efforts to silence his expression of his belief that the vast majority of patient complaints identified as "TMJ" are not "due to dental conditions and should not be treated dentally." Kirschner's suit against Catone, Director of the Office of Professional Discipline, Mills, Commissioner of the Education Department, and Hayden, Chancellor of the Board of Regents, seeks declaratory and injunctive relief against current and future prosecution based on statements made by Kirschner in his IMEs. Kirschner's suit against Klemons alleges that defendant Klemons used state disciplinary procedures for the unconstitutional purpose of silencing Kirschner's opposition to dental treatment of TMJ. Klemons acted as a witness for the prosecution against Kirschner, and Kirschner alleges that Klemons has advocated "using state disciplinary procedures to silence opponents of the dental treatment of . . . TMJ" by attending dental society conferences and "pass[ing] out model forms of complaint, suggesting that . . . members accuse dentists of 'fraud' if they render[] opinions against TMJ claimants." Further, Kirschner alleges that Klemons drafted one of these model complaints to assist in prosecuting Kirschner. Moreover, Kirschner's suit against Dr. Jay Goldman claims that Goldman is also a "TMJ dentist" and that he used a model complaint drafted by Klemons to assist three of his patients in filing complaints against Kirschner due to his malice towards Kirschner. Finally, Kirschner brought state law claims against Goldman and Klemons on the ground that they had acted improperly in bringing or helping others to bring complaints against him, and on the ground that Klemons violated Kirschner's right to confidentiality of the disciplinary hearings (before the Regents made their final decision), guaranteed by New York Education Law § 6510(8).
 
 
 12
 After the hearing panel made its recommendations, but shortly before the Regents were scheduled to make their decision, Kirschner moved in the district court for a preliminary injunction to enjoin the Regents from publishing their decision for a brief period of time, until Kirschner could bring his Article 78 proceeding and obtain a stay of enforcement. The district court (Casey, J.) denied Kirschner's motion for preliminary injunction in an oral ruling on the grounds that the Younger doctrine required abstention, and that Kirschner had in any case not satisfied the requirement of irreparable harm needed to obtain a preliminary injunction. The district court simultaneously dismissed the entire action.
 
 
 13
 Subsequently, the review committee recommended to the Regents that the hearing panel's findings be upheld on all charges except the fraud charge (because there was insufficient evidence of fraudulent intent), and that the fines be upheld, but that the suspension be stayed for a two year probationary period. The Regents rejected the review committee's recommendation as to the penalty to be imposed on Kirschner and instead adopted the more severe penalty recommendation of the hearing committee, but accepted the review committee's recommendation to reject the fraud charge.
 
 
 14
 Kirschner then filed his Article 78 proceeding seeking review of the Regents' decision. After hearing oral argument, the Appellate Division, Third Department, entered a stay of enforcement of the Regents' penalty, and, as a practical matter, prohibited the state from disseminating the Regents' decision against Kirschner. The Appellate Division ultimately found that substantial evidence did not support the Regents' findings that Kirschner had practiced dentistry with gross incompetence, or had practiced dentistry with incompetence on more than one occasion, and vacated those findings, and the concomitant penalties against Kirschner. The Appellate Division did, however, affirm the Regents' finding that Kirschner had failed to follow proper infection control procedures in that he did not wear gloves while performing an IME on one patient, and the associated penalty, a five hundred dollar fine. See In the Matter of Kirschner, 711 N.Y.S.2d 65 (App. Div. 3d Dept. 2000).
 
 
 15
 Kirschner now appeals the dismissal of his case by the district court, and defendants-appellants contend that Younger abstention is required as to every claim.
 
 DISCUSSION
 
 16
 In Younger v. Harris, 401 U.S. 37, the Supreme Court stated the principle that "a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment or irreparable injury that is both serious and immediate." Gibson v. Berryhill, 411 U.S. 564, 573-74 (1973). The "cost, anxiety, and inconvenience of having to defend against a single criminal prosecution" does not constitute the necessary type of irreparable injury. Huffman v. Pursue, Ltd., 420 U.S. 592, 601-02 (1975) (internal quotation marks and citation omitted). More recently, the Supreme Court has explained that "[t]he policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved." Middlesex County Ethics Comm. v. Garden State Bar Ass'n., 457 U.S. 423, 432 (1982). Therefore, "unless state law clearly bars the interposition of the constitutional [or federal] claims," and "so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." Id. at 432, 435 (internal quotation marks and citation omitted). Younger itself explained that exceptions to abstention should be made only on a "showing of bad faith, harassment, or . . . other unusual circumstance." Younger, 401 U.S. at 54.
 
 
 17
 Kirschner concedes that the ongoing proceeding in his case is a "judicial proceeding" involving "important state interests." However, he disputes the applicability of Younger primarily on the grounds that the "special circumstances," Gibson, 411 U.S. at 573-74, of his case involving bias bring it within the exception, and that the necessary predicate that the claims are capable of adjudication in the ongoing state proceeding has not actually been satisfied. Kirschner contends that his claims cannot be barred under Younger both because he cannot obtain all of the relief he seeks through his Article 78 proceeding, and because individuals acting in their private capacities do not receive the "protection" of Younger.
 
 
 18
 Goldman and Klemons counter that Younger is fully applicable to the claims Kirschner raises against them as individuals. The official defendants, Catone, Mills, and Hayden, argue that Younger abstention is required as to Kirschner's claims against them, since the prerequisites for Younger abstention are met, "bias" was not present, and Kirschner can obtain any relief to which he is entitled (as against the official defendants) in his Article 78 proceeding.
 
 
 19
 Initially, we note that it is irrelevant that the state proceeding (the Article 78 proceeding) was brought by Kirschner rather than the state, as an appeal from the Regents' determination. The Supreme Court has clearly held that a would-be plaintiff who has been subjected to a state proceeding which he seeks to challenge in federal court must first exhaust all available state appellate remedies - unless, of course, an exception to Younger applies or other Younger prerequisites are not met. See Huffman v. Pursue, Ltd., 420 U.S. 592, 608 (1975). In Huffman, the Supreme Court addressed a plaintiff who sought relief in federal district court rather than appealing the result of a state proceeding against him through the state's appellate courts, and noted that "[a]s a matter of state procedure, the judgment presumably became final, in the sense of being nonappealable, at some point after the District Court filing." Id. The Huffman Court explained, nevertheless, that
 
 
 20
 regardless of when . . . [a state court's] judgment bec[omes] final, . . . a necessary concomitant of Younger is that a party . . . must exhaust his state appellate remedies before seeking relief in the District Court, unless he can bring himself within one of the exceptions specified in Younger . . . . [I]t is typically a judicial system's appellate courts which are by their nature a litigant's most appropriate forum for the resolution of constitutional contentions . . . . [W]e do not believe that a State's judicial system would be fairly accorded the opportunity to resolve federal issues arising in its courts if a federal district court were permitted to substitute itself for the State's appellate courts.
 
 
 21
 Id. at 608-609. Kirschner has not alleged that he has exhausted all avenues of appeal from the state proceeding. We therefore must examine whether any other prerequisites for Younger abstention are absent, or whether the Kirschner has shown "special circumstances" that would warrant an exception to Younger.
 
 
 22
 Additionally, we note that it is irrelevant to the application of Younger that Kirschner's constitutional claims in this appeal were not addressed by the Appellate Division. The Appellate Division noted that it "decline[d] to address petitioner's further contentions" "[i]n light of" its decision to vacate the most serious of the findings against Kirschner. In the Matter of Kirschner, 711 N.Y.S.2d at 69. It did not state that Petitioner's contentions could not be addressed in an Article 78 proceeding; to the contrary, the Appellate Division's statement implied that the proceeding was a proper place to raise the claims, since the Appellate Division "decline[d] to address" them "[i]n light of" its decision on the merits. Id. The language of Huffman indicates that the question whether the state's procedural remedies could provide the relief sought does not turn on whether the state will provide the relief sought by the plaintiff before the federal court. Kirschner has made no showing that the State's laws, procedures, or practices would prevent his effective interposition of his federal contentions.
 
 
 23
 A. The Younger doctrine requires dismissal of Kirschner's claims against Catone, Mills, and Hayden for declaratory relief.
 
 
 24
 As to his claims against Catone, Mills, and Hayden, Kirschner argues that he is entitled to declaratory relief[1] (and attorneys' fees). The Younger doctrine is as applicable to suits for declaratory relief as it is to those for injunctive relief; the Supreme Court held in a companion case to Younger that Younger's policy would "be frustrated as much by a declaratory judgment as it would be by an injunction." Samuels v. Mackell, 401 U.S. 66, 73 (1971). Kirschner argues that Younger abstention would be inappropriate for three reasons: (1) the state Article 78 proceeding cannot provide him with all of the relief he seeks, including declaratory relief and attorneys' fees, and thus "state law clearly bars the interposition of [his] constitutional claim[]," Middlesex, 457 U.S. at 432 (internal quotation marks and citation omitted), so that Younger abstention would be improper, (2) even if he could bring a separate action in state court for declaratory relief, he is under no obligation to do so and is entitled to a federal forum for his claim, and (3) bias so plagued the disciplinary proceedings that an exception to the Younger doctrine applies.
 
 
 25
 As for Kirschner's contention that an Article 78 proceeding cannot provide him with the relief he seeks, it is long-established law that a declaratory judgment is available in an Article 78 proceeding challenging decisions concerning professional licensing, as long as "all necessary parties are before the court." In the Matter of Gold, 29 N.Y.2d 468, 468 (1972); accord Cecos Int'l., Inc. v. Jorling, 895 F.2d 66, 71 (2d Cir. 1990) ("[T]he question of whether the statute has been applied in an unconstitutional fashion may be raised directly in an Article 78 proceeding" and the court may "treat[] the Article 78 petition . . . as a declaratory judgment action.").
 
 
 26
 As for attorneys' fees, even if it were true that state law did not provide for their award (or did not provide for their award on terms as favorable as federal law), we doubt that this would render Younger inapplicable. The Younger abstention policy presupposes that the plaintiff be able to interpose his federal defense against a criminal or regulatory proceeding in the state court; it does not require that all the procedures for the interposition of the federal defense be as advantageous in the state court as in the federal action. In any event, Kirschner cites no authority for the proposition that attorneys' fees are not recoverable in such an action in an Article 78 proceeding; he merely makes a naked assertion. Since Younger abstention is required unless "'it plainly appears'" that the federal claims cannot be determined in the state proceeding, his conclusory assertion regarding attorneys' fees cannot suffice. See Middlesex, 457 U.S. at 435 (implying that would-be federal plaintiff facing Younger doctrine bears burden of demonstrating that the claim cannot be adjudicated in the state proceeding) (quoting Younger, 401 U.S. at 45).[2]
 
 
 27
 Kirschner's second contention - that regardless whether his claims could be adjudicated in state court, he is entitled to a federal forum - has no merit. It simply disregards Younger. The defining feature of Younger abstention is that even though either a federal or a state court could adjudicate a given claim, when there is an ongoing state proceeding in which the claim can be raised, and when adjudicating the claim in federal court would interfere unduly with the ongoing state proceeding, the claim is more appropriately adjudicated in state court.
 
 
 28
 Finally, we reject Kirschner's contention that bias so plagued the state disciplinary proceedings that a Younger exception applies (or that the prerequisites of Younger have not been met). Mere conclusory allegations of bias are insufficient to overcome Younger - a plaintiff seeking to avoid Younger must affirmatively demonstrate the justification for application of an exception. Cf. Gibson, 411 U.S. at 579 (implying that presence of impermissible bias is a mixed or factual question to be determined by district court in deciding whether abstention is warranted); Cullen, 18 F.3d at 104 (same).
 
 
 29
 In addressing whether bias drove the proceedings against Kirschner so that Younger abstention would be improper, when the district court ruled on Kirschner's motion for preliminary injunction, it held that Kirschner's claim of bias on the part of the hearing panel had no relevance to the question whether the Regents should be enjoined from publishing their decision until Kirschner could obtain appellate review. The district court reasoned that to avoid Younger, any bias would need to be on the part of the Regents, since the Regents were the body against which Kirschner sought a preliminary injunction. This conclusion is inconsistent with the Supreme Court's language in Gibson:
 
 
 30
 Here the predicate for a Younger v. Harris dismissal was lacking, for the appellees alleged, and the District Court concluded, that the State Board of Optometry was incompetent by reason of bias to adjudicate the issues pending before it . . . . Nor, in these circumstances, would a different result be required simply because judicial review, de novo or otherwise, would be forthcoming at the conclusion of the administrative proceedings.
 
 
 31
 411 U.S. at 577. It is also inconsistent with our holding in Cullen, where we affirmed a district court's injunction of a disciplinary proceeding against a schoolteacher after the (prosecutorial) actors deemed to be acting out of retaliatory animus had already acted, when the pending proceeding was by a body which was not alleged to be biased. See Cullen, 18 F.3d 96.
 
 
 32
 Nevertheless, in our view, Kirschner's allegations of bias do not merit a finding that Kirschner's case falls within an exception to the Younger doctrine.
 
 
 33
 First, Kirschner bases much of his complaint that the proceeding was irreparably biased on his allegations regarding Klemons: that he specializes in the treatment of car accident-caused TMJ, and has advocated "using state disciplinary procedures to silence opponents of the dental treatment of . . . TMJ" by attending dental society conferences and "pass[ing] out model forms of complaint, suggesting that . . . members accuse dentists of 'fraud' if they render[] opinions against TMJ claimants." Further, Kirschner claims that the fact that Klemons violated his right to confidentiality demonstrates Klemons's bias against him. Klemons apparently revealed the existence of disciplinary proceedings against Kirschner when Klemons wrote a letter to an insurance company protesting their selection of Kirschner as the dentist to perform an IME on Klemons's patient, pointing to the fact that charges were pending against Kirschner and citing questionable statements attributed to Kirschner during the hearings.
 
 
 34
 Klemons, however, was not an adjudicator or a prosecutor in the proceeding - he was merely called as a witness by the prosecution. The analysis might be different if Kirschner demonstrated that the prosecution selected Klemons out of bias against Kirschner and his views, but Kirschner's contentions on this point are insubstantial.
 
 
 35
 Second, Kirschner argues that improper motivation of the prosecution and adjudicators is evidenced by the fact that the penalty recommended by the Office of Professional Discipline's hearing panel was grossly disproportionate to his purported offense. However, Kirschner has not even alleged, much less presented evidence, that any dentist was less severely penalized for similar conduct.
 
 
 36
 Third, Kirschner claims that the proceedings were incurably biased because Dr. Ronald Maitland, the chairman of the hearing panel, was biased. After the hearing panel recommended that Kirschner be found guilty on all charges, but before the Regents had made an actual decision, Kirschner hired a private investigator to investigate Maitland. Kirschner contends on appeal that the investigation revealed pecuniary interest on Maitland's part in silencing Kirschner, since Maitland was found to be a dentist who does at times diagnose patients with TMJ and direct them to use the MORA appliance. Kirschner also claims that this finding by the investigator (1) shows that Maitland lied when questioned about possible biases he might have before the hearing panel's hearing began, and that Maitland's lying must have been because he wished to remain on the panel and carry out his personal vendetta against Kirschner, and (2) shows that the Regents were hopelessly biased against Kirschner because they were unmoved by the evidence unearthed by his investigation of Maitland and still imposed a penalty upon him. However, the evidence relating to the results of the investigation does not show that Maitland lied about anything, much less that he would have any significant pecuniary interest in "silencing" Kirschner. The Regents may well have made no comment on Kirschner's allegations about Maitland because they determined that the charges were unfounded, not because they were solidly biased against Kirschner. The Regents' lack of response to Kirschner's allegations does not show bias.
 
 
 37
 Kirschner's other allegations of bias are relatively conclusory, and we do not address them in detail here. Instead, we simply note that they are unsupported and insubstantial. Since Kirschner has failed to show that an exception is applicable, Younger requires that we abstain from hearing Kirschner's claims for declaratory relief against Catone, Mills, and Hayden. The district court correctly dismissed these claims.
 
 
 38
 B. The Younger doctrine does not require dismissing Kirschner's § 1983 claim for damages against Klemons.
 
 
 39
 Kirschner's complaint included a claim for damages against Klemons under § 1983, premised on the contention that Klemons violated Kirschner's rights under the First Amendment to free speech. This claim was among those dismissed under Younger (although the district court made no particularized mention of it).
 
 
 40
 Younger originated as a doctrine regarding when federal courts should exercise equitable discretion and abstain from exercising jurisdiction altogether. See 401 U.S. at 43-44; Erwin Chemerinsky, Federal Jurisdiction 774 (3d ed. 1999). When money damages, as opposed to equitable relief, are sought, it is less likely that unacceptable interference with the ongoing state proceeding, the evil against which Younger seeks to guard, would result from the federal court's exercise of jurisdiction. Accordingly, we have held that abstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical issues and we would dismiss otherwise identical claims for declaratory and injunctive relief, but that a stay of the action pending resolution of the state proceeding may be appropriate. See Giulini v. Blessing, 654 F.2d 189, 192-94 (2d Cir. 1981). The Supreme Court has declined to reach the issue whether Younger applies to claims for money damages, but has noted that even if it does, the federal suit should be stayed, rather than dismissed, if the money damages sought could not be obtained in the pending state proceeding, even if the money damages sought could be obtained in a separate state proceeding. See Deakins v. Monaghan, 484 U.S. 193, 201-03 (1988); see also Middlesex, 457 U.S. at 432 (internal quotation marks and citations omitted) (when "interposition of the constitutional [or federal] claims" in the state proceeding is not possible, abstention is improper). We have also observed in the related context of Burford abstention that because "the Supreme Court [has] carefully traced the origin of abstention doctrines to the federal courts' discretion to withhold equitable relief . . . . abstention is generally appropriate only in cases where equitable relief is sought," and have thus refused to abstain under Burford v. Sun Oil Co., 319 U.S. 315 (1943), where claims for money damages were at issue. Tribune Co. v. Abiola, 66 F.3d 12, 16 (2d Cir. 1995) (citation omitted). Accordingly, regardless of the inapplicability or applicability of any exception, we hold that Younger abstention is not appropriate with respect to Kirschner's claim for money damages under § 1983 against Klemons because it is a claim for money damages and not for declaratory or injunctive relief.
 
 
 41
 Moreover, we note that the other prerequisites for Younger abstention may not be met as to this claim, because it is highly unlikely that Kirschner could bring his § 1983 claim for money damages against Klemons in his Article 78 proceeding. Although the New York Court of Appeals has held that money damages are recoverable in Article 78 proceedings, they must be "incidental" to the primary relief sought. See Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 347 (1999); see also Davidson v. Capuano, 792 F.2d 275, 278-79 (2d Cir. 1986) (observing that damages for civil rights violations do not seem to be obtainable in Article 78 proceedings as they are not "incidental" to the primary relief sought). In Parker, a firefighter was discharged and fought his dismissal in an Article 78 proceeding on the ground that the municipal authority's decision to dismiss him was not supported by substantial evidence, and on the ground that dismissal violated his constitutional rights. Section 1983 damages for the alleged violations of the firefighter's constitutional rights were deemed not "incidental" to the primary relief he sought - reinstatement - and thus his § 1983 claim could not be adjudicated in the Article 78 proceeding. See Parker, 93 N.Y.2d at 347. The likelihood that Kirschner will be able to obtain § 1983 damages against Klemons in the pending proceeding is therefore extremely remote. Further, Kirschner may be precluded from obtaining § 1983 damages, since the party against whom Kirschner seeks damages (Klemons) is not an official body or an officer being sued in his official capacity, as would seem to be required by N.Y. C.P.L.R. 7806. See C.P.L.R. 7806 ("[In an Article 78 proceeding, a]ny restitution or damages . . . must be incidental to the primary relief sought . . . and must be such as [the petitioner] might otherwise recover on the same set of facts in a separate action . . . suable in the supreme court against the same body or officer in its or his official capacity."). Since unavailability of the relief sought in the ongoing state proceeding also precludes Younger abstention, see Middlesex, 457 U.S. at 434-35, we reinstate the constitutional claim against Klemons and remand to the district court. The district court should consider upon remand whether to stay the action pending conclusion of the state proceedings.
 
 
 42
 C. Pendent jurisdiction is available over Kirschner's state law tort claims against Klemons.
 
 
 43
 Because we reinstate Kirschner's § 1983 claim against Klemons, the district court may exercise pendent jurisdiction over the state law claims against Klemons. Pendent jurisdiction applies where the state law claim in question arises out of the same set of facts that give rise to an anchoring federal question claim. See 28 U.S.C. § 1367; Greenblatt v. Delta Plumbing & Heating Corp., 68 F.3d 561, 576 (2d Cir. 1995). Both Kirschner's § 1983 claim and his state law tort claims against Klemons arise out of the same set of factual allegations: that Klemons was biased against Kirschner and therefore testified against Kirschner in order to silence Kirschner and to interfere with his practice. Therefore, the district court has jurisdiction over Kirschner's state law claims against Klemons. Furthermore, for the same reasons (as we discuss above with respect to Kirschner's § 1983 claim for money damages against Klemons), Younger abstention is inappropriate as to Kirschner's state law tort claims against Klemons. It lies within the district court's discretion whether to exercise pendent jurisdiction and if so, whether to stay the state law claims pending completion of the state proceedings.
 
 
 44
 D. No jurisdiction exists over Kirschner's state law claims against Goldman.
 
 
 45
 Regarding Kirschner's state law claims against Goldman, we need not reach the question of Younger abstention because we affirm the district court's dismissals on jurisdictional grounds. Kirschner does not claim that diversity jurisdiction is available as a source of federal jurisdiction over his state law claims against Goldman, so the claims can be maintained only if the exercise of supplemental jurisdiction is appropriate.
 
 
 46
 We have previously observed that 28 U.S.C.§ 1367(a) responds to the Supreme Court's decision in Finley v. United States, 490 U.S. 545 (1989) and thereby makes pendent party jurisdiction possible where the claim in question arises out of the same set of facts that give rise to an anchoring federal question claim against another party. See Greenblatt, 68 F.3d at 576. Kirschner's claims against Goldman are based primarily on Goldman's alleged actions in encouraging his patients to complain about the way Kirschner treated them. Kirschner's claims against Goldman arise out of a different nucleus of fact than do his federal and state law claims against Klemons, which are based largely on Klemons's testimony in the hearing, and on Klemons's alleged dissemination of confidential information that came out during the hearing. As a result, the umbrella of pendent jurisdiction does not extend to cover Kirschner's state law claims against Goldman, and the claims were properly dismissed. We have considered Kirschner's other contentions and find them to be meritless.
 
 CONCLUSION
 
 47
 We AFFIRM the district court's dismissal of the claims for declaratory relief against Catone, Mills, and Hayden, and AFFIRM the dismissal as against Goldman, but VACATE the dismissal of the claims against Klemons.
 
 
 
 NOTES:
 
 
 *
 Hon. Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.
 
 
 [1]
 We conclude that Kirschner has abandoned his claims for injunctive relief, but even if he had not, our analysis would be no different.
 
 
 [2]
 Although we do not speculate as to the implications for Kirschner's case, or for practice in the New York State courts generally, we observe that the Supreme Court has held that attorneys' fees are available in state court pursuant to 42 U.S.C. § 1988 whenever § 1983 claims are adjudicated. See Maine v. Thiboutot, 448 U.S. 1, 9 (1980).