PATHWAYS, INC., Plaintiff,

v.

R. Michael DUNNE, et al., Defendants.

No. 3:00CV1275(CFD).

United States District Court, D. Connecticut.

Sept. 28, 2001.

Daniel W. Moger, Jr., Jacques & Moger, PC, Greenwich, CT, for Pathways, Inc.

Brian C. Roche, Pullman & Comley, Bridgeport, CT, Gerald C. Pia, Jr., Pullman & Comley, Bridgeport, CT, Andrew J. McDonald, Pullman & Comley, Stamford, CT, for R. Michael Dunne, Margaret W. Casey, Brookridge Dist. Ass'n.

Michael J. Cacace, Jane W. Freeman, Cacace, Tusch & Santagata, Stamford, CT, for Leslie S. Bhutani, Charles R. Vitale, Mamie I. Lee.

Fernando F. De Arango, Aamina Ahmad, Haden P. Gerrish, Greenwich, CT, for Town of Greenwich, Planning & Zoning Com'n of Town of Greenwich, Louisa H. Stone, Peter K. Joyce, Carmella C. Budkins.

### *RULING ON DEFENDANTS' MOTIONS TO DISMISS*

DRONEY, District Judge.

I. *Introduction*

Pathways, Inc. ("Pathways"), a non-profit corporation operating residential facilities for mentally handicapped individuals, brings this action under the Fair Housing

Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and the Connecticut Human Rights and Opportunities Act, Conn. Gen.Stat. § 46a–64c ("CHROA"). It alleges that the Brookridge District Association ("BDA"), several of its members, the Town of Greenwich ("the Town"), the Planning and Zoning Commission of the Town of Greenwich ("the Planning Commission"), and certain town officers discriminated against it by withholding zoning approval for improvements to a house that it plans to use as a group home for low income mentally handicapped residents, by interfering with the zoning approval process, and by failing to make certain "reasonable accommodations."

Pending are two motions to dismiss. The first motion [Doc. # 20] was filed by the BDA; its former president, R. Michael Dunne ("Dunne"); and its current president, Margaret W. Casey ("Casey"). These defendants argue: (1) that this action should be dismissed for lack of subject matter jurisdiction under the principles set forth in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), referred to as the *Rooker–Feldman* doctrine; (2) that the Court should abstain on the doctrines set

forth in the Anti–Injunction Act, 28 U.S.C. § 2283, *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); and (3) that the plaintiff's FHA claim should be dismissed for failure to state a claim upon which relief can be granted because it violates the principles set forth in *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), referred to as the *Noerr–Pennington* doctrine. The second motion to dismiss [Doc. # 36] was filed by three other members of the BDA, Leslie S. Bhutani ("Bhutani"), Charles R. Vitale ("Vitale"), and Mamie I. Lee ("Lee"), and joins the previously-filed motion to dismiss in all respects.[1] Neither the Town, the Planning Commission, nor the Town officials named as defendants have moved to dismiss this action.

## II.  *Background*[2]

This action arises from Pathways' decision to purchase and make improvements to a house located at 509 East Putnam Drive in Greenwich, Connecticut. Pathways plans to use the house, which is located at the corner of Brookridge Drive,

---

1. A summons was issued and apparently served on defendant Nicholas F. Papanicolaou ("Papanicolaou"), but an appearance has not been entered on his behalf.

2. The recited facts, which generally are taken from the complaint, are accepted as true in the context of the pending motions to dismiss. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). As stated above, the pending motions are made pursuant to 12(b)(1), 12(b)(6), and several abstention doctrines. As to the 12(b)(1) motion, a court may consider affidavits and other materials beyond the pleadings themselves to resolve the jurisdictional question. *Magee v. Nassau County Med. Center*, 27 F.Supp.2d 154, 158 (E.D.N.Y.1998). The same is true with a motion to dismiss based on one of the abstention doctrines. *DeLoreto v. Ment*, 944 F.Supp. 1023, 1028–29 (D.Conn.1996). With respect to the 12(b)(6) motion to dismiss, the Court has not considered materials outside the pleadings, *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991), except for documents which are incorporated in it by reference. *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.2000).

as a residence for sixteen individuals who suffer from mental illness. Owners of property on Brookridge Drive, as well as property owners residing on several nearby streets, are eligible to be members of the BDA, an unincorporated association. The BDA and its members, many of whom are defendants in this action, allegedly engaged in a series of legal actions intended to prevent Pathways from developing the house for its intended use.

## A. *State Suit I*

On December 30, 1997, the BDA filed suit in the Connecticut Superior Court against Pathways and the owner of 509 East Putnam Avenue, seeking to enjoin the proposed use and sale because the BDA believed it violated a restrictive covenant, and seeking to enjoin any commercial activities on the property.[3] *See* Am. Compl.; Mem. Supp. Mot. Dismiss, Ex. A.[4] Despite the pending lawsuit, Pathways purchased the property on April 1, 1998, and the BDA withdrew its complaint on September 14, 1998. However, still pending in that action is a counterclaim filed by Pathways, which alleges that the BDA's attempts to enjoin the sale violated the FHA and the CHROA. *See* Pathways, Inc.'s Answer, Special Defenses & Countercl., Mem. Supp. Mot. Dismiss, Ex. B. Pathways filed a motion for summary judgment as to the counterclaim on November 23, 1998, and the BDA has filed an objection; the motion and counterclaim remain pending in the Connecticut Superior Court. *See* Def. Pathways, Inc's Mot. Summ. J., Mem. Supp. Mot. Dismiss, Ex. D.

## B. *State Suit II*

In March 1999, Pathways applied to the Planning Commission for a special permit and site plan approval to build an addition to the East Putnam Avenue house and to use the building for congregate housing for sixteen mentally handicapped individuals. Included in the application was a copy of the approvals already obtained by the state and local health departments to replace the property's existing septic system. The BDA asked the Planning Commission to deny Pathways' application. On June 22, 1999, the Planning Commission denied Pathways' application. On July 9, 1999, Pathways appealed the Planning Commission's decision to the Connecticut Superior Court.[5] Pathways and the Planning Commission eventually reached a settlement while the appeal was pending whereby Pathways agreed to limit the numbers of bedrooms to be added and to house only ten individuals at the residence. However, before the settlement could be formally approved by the Planning Commission or judgment entered, the BDA moved to intervene in the appeal to oppose the settlement. *See* Mot. Intervene Join Additional Party, Mem. Supp. Mot. Dismiss, Ex. H.

The Superior Court then denied the BDA's motion to intervene, and the BDA petitioned the Connecticut Appellate Court for certification to appeal, which was granted. *See* Mem. Decision Mot. Intervene, Mem. Supp. Mot. Dismiss, Ex. J; Pet. Certification Trial Court, Mem. Supp. Mot. Dismiss, Ex. K; Order Pet. Certification Appeal, Mem. Supp. Mot. Dismiss, Ex. L. The appeal has been briefed and is currently pending in the Connecticut Supreme Court.[6] The BDA also filed in Su-

---

**3.** This case is styled *Brookridge District Association v. Pathways, Inc. and Mary Caroline White,* CV 98 0163066 S.

**4.** In the instant action, Pathways alleges that the BDA threatened the owner of the property with continued suit if she refused to follow the restrictive covenant.

**5.** This action is styled *Pathways, Inc. v. Planning and Zoning Commission of the Town of Greenwich,* No. CV 99–0497666 S.

**6.** The Connecticut Supreme Court took the appeal from the Appellate Court pursuant to Conn. Gen.Stat. § 51–199(c).

perior Court an intervention notice pursuant to Section 22a–19 of the Connecticut General Statutes, in which it argued that the implementation of Pathways' plans will have a negative environmental impact, based upon the alleged inadequacy of the septic system. Pathways then filed a motion to dismiss the § 22a–19 claims, which was denied by the Superior Court. The Superior Court also continued a previous stay of State Suit II pending the Connecticut Supreme Court's decision, except as to the environmental issues relating to § 22a–19. *See* Hearing of Nov. 21, 2000, Defs.' Ex. 4, at 30. As a result of the stay, a motion for judgment on the stipulated settlement cannot be approved by the Superior Court until after the Connecticut Supreme Court rules on the BDA's intervention appeal. Conn. Gen.Stat. § 8–8(m).

### C. *Other State Actions*

The BDA appealed the Planning Commission's decision to accept the settlement to the Connecticut Superior Court in at least two other actions in Connecticut Superior Court. One complaint was dismissed, but apparently refiled and eventually dismissed. The dismissal of that administrative appeal then was appealed to the Connecticut Appellate Court and transferred to the Connecticut Supreme Court, where briefing is either complete or will be completed soon.[7]

---

7. The parties have not provided any additional details on the status of this case.

8. As an initial matter, it is clear from the plaintiff's complaint that it does not expressly seek an injunction in the form of a stay of state court proceedings. However, to the extent that the injunctive relief requested would bar the BDA and its members from litigating the intervention issue in the second action,

### III. *Discussion*

### A. *Anti–Injunction Act*

■ The defendants argue that the Pathways' claims seeking injunctive relief are barred by the Anti–Injunction Act, 28 U.S.C. § 2283. The plaintiff argues that the Act does not apply because its claims fall under two of its three exceptions.

■ The Anti–Injunction Act provides that, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The three exceptions listed in the Act should be narrowly construed. *See Mitchum v. Foster*, 407 U.S. 225, 228–29, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).[8]

■ As to the first exception, an injunction is "expressly authorized" by Congress when (1) the statute ... "create[s] a specific and uniquely federal right or remedy, enforceable in a federal court of equity," and (2) the federal right or remedy must be such that it can be given its intended scope only by the stay of a state court proceeding. *Id.* at 237–238, 92 S.Ct. 2151 (holding that § 1983 falls within "expressly authorized" exception of Anti–Injunction Act and thus authorizes injunctions staying state-court proceedings). Here, the plaintiff urges the Court to conclude that injunctions under the FHA fall within the "expressly authorized" exception. While the Second Circuit has not decided this

and from pursuing their own zoning appeal, it effectively would operate as a stay of the state court action. *See Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970) (holding that the Anti–Injunction Act "cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding").

issue, the First Circuit has determined that injunctions were not expressly authorized by the FHA. *See Casa Marie v. Superior Court of Puerto Rico,* 988 F.2d 252, 261–62 (1st Cir.1993). The Court finds the reasoning in *Casa Marie* persuasive and adopts it. For this reason, the "expressly authorized" exception does not apply.

▆▆▆ Pathways also argues that the third exception to the Anti–Injunction Act, that injunctive relief is necessary to protect or effectuate its judgment (also referred to as the relitigation exception), applies in this case. "The relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court. It is founded in the well-recognized concepts of res judicata and collateral estoppel." *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 147, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988). "[A]n essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." *Id.* at 148, 108 S.Ct. 1684. "[T]he part of the relitigation exception to the Anti–Injunction Act that is based on concerns of res judicata is more narrowly tailored than the doctrine of res judicata. The relitigation exception does not protect the full res judicata effect of a federal court's judgment; rather, it protects only matters that actually have been decided by a federal court." *Staffer v. Bouchard Transportation Co.,* 878 F.2d 638, 643 (2d Cir.1989).[9] Here, there is no federal court judgment that the plaintiffs

seek to enforce. Therefore, the relitigation exception to the Anti–Injunction Act does not apply.

Given that these exceptions do not apply, the Court concludes that the Anti–Injunction Act bars Pathways' claims for injunctive relief at this juncture because they would effectively halt the state court proceedings, if granted. However, this ruling applies only to Pathways' claims for injunctive relief. As Pathways correctly points out, the Anti–Injunction Act, which specifically prohibits courts from *enjoining* state court actions, does not bar claims for money damages.

### B. *Abstention doctrines* [10]

▆▆▆ When there is concurrent federal and state jurisdictions, the federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). "[T]he mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Id.* at 816, 96 S.Ct. 1236. With this principle in mind, the Court will consider the abstention doctrines applicable to this case.

#### 1. *Younger* abstention

▆▆▆ The defendants argue that the Court should abstain from exercising jurisdiction over Pathways' claims for injunctive and declaratory relief under the principles set forth in *Younger* and maintain that the claims here are an attempt to "sidestep" the pending state court appeal. The defendants also argue under *Younger*

---

**9.** The Second Court has not decided whether the relitigation exception applies only to issues which the parties would be collaterally estopped from relitigating, or whether it is broader, but it has noted that where collateral estoppel applies, the relitigation exception

will also apply. *MLE Realty Assocs. v. Handler,* 192 F.3d 259, 262 (2d Cir.1999).

**10.** Because the town defendants have joined in the BDA defendants' motion to dismiss, the Court will address the claims against the Town defendants as well.

that this action is improperly brought in federal court because there are important state interests in administering its judicial system and in interpreting Connecticut land use statutes and zoning laws. Pathways contends that *Younger* abstention is inappropriate because the state court proceedings are remedial, not coercive.

Under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, federal courts may abstain from hearing cases that would interfere with state criminal proceedings or with certain state civil proceedings. *See Abric*, 1998 WL 928420, at * 2. Abstention is appropriate where: (1) there is an ongoing state proceeding; (2) an important state interest is implicated; and (3) the plaintiff is able to raise its federal constitutional claims in state court. *Id.* (citing cases). This doctrine applies to suits for declaratory and injunctive relief. *Kirschner v. Klemons*, 225 F.3d 227, 235 (2d Cir.2000). Upon consideration of the relevant factors, the Court concludes that the plaintiff's claims for injunctive and declaratory relief should be dismissed on the basis of *Younger*.

As to the first factor, "[s]tate proceedings are ongoing until the parties exhaust their state appellate remedies." *Krimstock v. Safir*, No. 99 Civ. 12041 MBM, 2000 WL 1702035, at *2 (S.D.N.Y. Nov.13, 2000) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)). Here, ongoing proceedings include Pathways' counterclaim that raises FHA and CHROA claims as well as its zoning appeal to the superior court.

Second, state proceedings involve an important state interest when they "concern the central sovereign functions of state government." *Philip Morris, Inc. v.*

*Blumenthal*, 123 F.3d 103, 105 (2d Cir. 1997). In making this determination, courts should consider the underlying nature of the class of cases to which the state proceeding belongs, not only the state's outcome in a particular case. *Id.* Although the plaintiff's claims for injunctive and declaratory relief involve federal civil rights statutes, the nature of the plaintiff's allegations-that the defendants engaged in "pretextual" legal tactics that should be enjoined-implicates an important state interest in the sense that they involve the administration of local zoning laws and the processing of zoning appeals in the state courts. *Cf. North Haven Planning & Zoning Comm. v. Upjohn Co.*, 753 F.Supp. 423, 427 (D.Conn.1990) (stating that the issue of whether an state agency regulation preempts local zoning law is an important state interest); *Wandyful Stadium, Inc. v. Town of Hempstead*, 959 F.Supp. 585, 590 (E.D.N.Y.1997) (finding an important state interest where town commenced proceedings to enforce zoning ordinance).

As to the third factor, "[m]inimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights." *Middlesex County Ethics Committee v. Garden State Bar Assoc.*, 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Here, the plaintiff has the opportunity to raise its federal claims and any related constitutional arguments in the state court. While the State Suit II-the zoning appeal-may not be an appropriate action to litigate those claims, the plaintiff has already included some of its FHA claims in its counterclaim in State Suit I and has not indicated any reason why its counterclaim could not be amended to assert additional federal causes of action and include allegations of conduct that occurred after the sale of the property.[11]

---

11. The United States Supreme Court has stated, "unless state law clearly bars the interposition of the constitutional [or federal] claims," and "so long as there is no showing

As to the claims for money damages, the Second Circuit has held that "abstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical issues and we would dismiss otherwise identical claims for declaratory relief, but that a stay of the action pending resolution of the state proceeding may be appropriate." *Kirschner*, 225 F.3d at 238 (citing *Giulini v. Blessing*, 654 F.2d 189, 192–94 (2d Cir. 1981)). Accordingly, the Court will stay the damages claims in this case pending the resolution of the state proceedings.

### 2. *Other abstention doctrines*

The defendants argue that this action should be dismissed based upon the abstention doctrines set forth in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236, but these doctrines do not justify dismissal here. In addition, the Court finds that dismissal based on the *Rooker–Feldman* doctrine is not warranted. Thus the defendants' motions to dismiss on these grounds are DENIED.

### C. *Motion to Dismiss for Failure to State a Claim*

The defendants argue that Pathways' claim that certain of their actions-mailing letters, seeking redress in the state courts, and petitioning the Planning Commission-violated the FHA must fail based on the *Noerr–Pennington* doctrine. They argue that those actions are protected by the First Amendment, and that the so-called "sham" exception to the *Noerr–Pennington* doctrine does not apply to their role in the state court actions. Pathways dis-

agrees and contends that it is clear that the purpose of the defendants' activities was illegal.

Under the *Noerr–Pennington* doctrine, the United States Supreme Court has held that no cause of action may be pursued when based solely on citizens' attempts to influence the legislature to pass laws or to influence the executive to enforce the laws. *Pennington*, 381 U.S. at 670, 85 S.Ct. 1585; *Noerr*, 365 U.S. at 135–36, 81 S.Ct. 523. However, *Noerr–Pennington* is not an absolute bar to claims based upon a defendant's petitioning of the courts for redress. "Just as false statements are not immunized by the First Amendment right to freedom of speech, . . . baseless litigation is not immunized by the First Amendment right to petition." *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). Thus, the *Noerr–Pennington* doctrine does not apply where petitioning activity, "ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Noerr*, 365 U.S. at 144, 81 S.Ct. 523. In *California Motor Transport*, the Supreme Court characterized this "sham exception" as "a pattern of baseless, repetitive claims . . . [that] lead[ ] the factfinder to conclude that the administrative and judicial processes have been abused." 404 U.S. 508, 513, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

The doctrine was originally based on the Court's construction of the Sherman Anti–Trust Act, *Noerr*, 365 U.S. at 132 n. 6, 81 S.Ct. 523. Here, of course, that

---

of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Middlesex County Ethics Comm.*, 457 U.S. at 432, 435, 102 S.Ct. 2515

(internal quotation marks and citation omitted); *Kirschner*, 225 F.3d at 233. The plaintiff has not argued that any exception is appropriate, and while the Court has considered them, it finds that do not apply here.

is not raised. The question then is whether the doctrine should be applied in the context of the plaintiff's claims, which allege that the actions taken by the BDA and its members in opposing the planned purchase and renovation of the house violated the FHA. Several courts have considered *Noerr–Pennington* in the context of claims under the FHA. *See, e.g., United States v. Robinson*, No. 3:92CV00345(TFGD) (D.Conn. Jan. 26, 1995); *White v. Lee*, 227 F.3d 1214 (9th Cir.2000); *Tizes v. Curcio*, No. 94 C 7657, 1995 WL 476675 (N.D.Ill. Aug.9, 1995). This Court also concludes that *Noerr–Pennington* is applicable to the instant action. However, while the defendants have provided the Court with substantial documentation of the state suits, it is not yet clear whether their legal actions fit within the "sham" exception. Therefore, the defendants' motion to dismiss for failure to state a claim is denied.

## IV. *Conclusion*

In sum, the plaintiff's claims for injunctive and declaratory relief against all the defendants are dismissed based upon the Anti–Injunction Act and *Younger* abstention. To the extent that Counts One and Two seek monetary damages, the claims remain, though they are stayed pending the outcome of the state cases. Accordingly, the defendants' motions to dismiss [Docs. ## 20 and 36] are GRANTED IN PART, DENIED IN PART.